UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| **ROBERT CHARLES SHAW** | **CIVIL ACTION NO. 12-0318** |
| **VERSUS** | **JUDGE ROBERT G. JAMES** |
| **CITY OF WEST MONROE** | **MAG. JUDGE JAMES D. KIRK** |

RULING

This is an employment discrimination action brought by Plaintiff Robert Charles Shaw ("Shaw") against Defendant City of West Monroe ("the City"), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*  Shaw contends that, while employed by the City, he was subjected to a hostile work environment, that he was more harshly disciplined for infractions than employees outside his protected class, and that he was discriminatorily discharged, all because of his age and race.

Pending before the Court is a Motion for Summary Judgment [Doc. No. 17] filed by the City.  Shaw failed to oppose the motion.  For the following reasons, the City's Motion for Summary Judgment is GRANTED.

I.      RELEVANT FACTS AND PROCEDURAL HISTORY

Shaw, an African-American, had been employed by the City in the Department of Public Works ("DPW") since October 13, 2005.  The DPW performs a variety of maintenance and improvement functions for the City and is subdivided into several departments, including the Sanitation Department ("the Department").  The Department uses several trucks with either two- or three-man crews to remove discarded waste or debris along City routes.

Shaw was hired by Ed Dayton ("Dayton"), who is white, and employed as a rake hand. He was not assigned to a specific truck, but was assigned to a specific crew. At the time of his discharge, Shaw had worked with Bill Hausherr ("Hausherr") and Justin Neely ("Neely") for a few years. As a rake hand, Shaw's main job was cleaning on the yard. He also had other duties, such as washing trucks, pulling tarps, and making water for the trucks. In addition, Shaw, who described himself as more of a utility person, filled in for other employees on the garbage truck or pulling cans, as well as providing assistance in other areas.

Shaw worked under the supervision of Kenneth Kennedy ("Kennedy"), who is white, and Michael Williams ("Williams"),[1] who is African-American. Dayton is Kennedy's supervisor.

Shaw had a long history of disciplinary problems. He was first disciplined shortly after he was hired for a verbal argument with another employee, culminating in his threat to Kennedy that he would "kill" the other employee. Although the warning is undated and unsigned, during his deposition, Shaw recalled the incident and acknowledged that it warranted a warning.

On September 14, 2007, Shaw received a written warning for impermissibly removing trash from his designated route and placing it in empty trashcans at the Department facility. Shaw had previously signed documentation acknowledging that he was not to remove discarded waste from the route for his personal use.

On December 9, 2009, Shaw received a written warning for a physical altercation with another employee. Although he felt that he should not have been written up since he did not start the physical aspect of the altercation, he had admitted that the altercation became physical after he told the other employee that he would "whup his ass and his mammy too." He did not sign

---

[1] Shaw erroneously referred to Williams as Michael Johnson during his deposition.

the warning, but was told that he could be suspended or terminated if another incident occurred.

On February 11, 2010, Shaw received a fourth written warning. On this occasion, Shaw was agitated about performing the job duty of making sure that a water cooler was made for his truck before beginning his shift. He came into the Department office and began yelling.

On February 22, 2010, Shaw received a last and final warning for failing to wear a visible safety vest while on the route. Although Shaw had the safety vest on, it was under his jacket. He received the warning, but again refused to sign it.

After his final warning, on February 24, 2010, after a review of Shaw's employment records and history, Dayton discharged Shaw because of his inability to work well with other employees.

Following his discharge, Shaw was replaced by a younger employee.

## II.     LAW AND ANALYSIS

### A.     Motions for Summary Judgment

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial burden of informing the Court of the basis for its motion by identifying portions of the record which highlight the absence of genuine issues of material fact. *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the

case. *Id.* "[O]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

Unless the moving party meets its initial burden, the Court may not grant a motion for summary judgment, even if the motion is unopposed. *Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 362 (5th Cir. 1995). However, pursuant to Local Rule 56.2, since Shaw failed to file an opposition and statement of contested material facts, the City's statement of uncontested material facts is deemed admitted.

    **B.**    **Race and Age Discrimination**

Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). Likewise, under the ADEA, an employer may not "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). With either a claim of race or age discrimination, the Court applies the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), to determine if there is a genuine issue of material fact for trial.[2] *See Cherry v. CCA Properties of Am., Ltd. Liab. Corp.*, 438 Fed. App'x. 348, 350 (5th Cir. 2011) (citing *Laxton v. Gap, Inc.*, 333

---

[2] The United States Court of Appeals for the Fifth Circuit has stated that "[w]hile the Supreme Court has not definitively resolved whether [the *McDonnell Douglas* framework is applicable to ADEA claims, ] . . . we are bound by our circuit precedent applying *McDonnell Douglas* to age discrimination cases." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010).

F.3d 572, 578 (5th Cir. 2003)).

"First, the plaintiff must establish a prima facie case of discrimination." *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000) (internal quotation marks and citations omitted). With regard to a claim of race discrimination, the plaintiff must show that he is a member of a protected class; is qualified for the job; suffered an adverse employment action by the employer; and was either replaced by someone outside his protected group or received less favorable treatment than a similarly situated individual outside the protected group. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). With regard to a claim of age discrimination, "a plaintiff must show that (1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (internal quotation marks and citation omitted).

If the plaintiff establishes his *prima facie* case, "the employer must respond with a legitimate, nondiscriminatory reason for its decision. This burden on the employer is only one of production, not persuasion, involving no credibility assessments." *Russell*, 235 F.3d at 222. Finally, if the employer meets its burden of production, the plaintiff must then offer evidence to create a genuine issue of material fact as to whether the nondiscriminatory reason is a pretext or is only one of the reasons for the employer's conduct and the plaintiff's protected characteristic is another motivating factor. *Burrell v. Dr. Pepper/Seven Up Bottling Group, Inc.*, 482 F.3d 408, 412 (5th Cir. 2007). A reason is pretextual if it is false, "unworthy of credence," or otherwise unpersuasive. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).

1.      **Race Discrimination**

In this case, Shaw contends that the City violated Title VII's prohibition against race discrimination by subjecting him to disparately harsh discipline and by discriminatorily discharging him.

a.      **Alleged Disparate Discipline**

In his Complaint, Shaw summarily contends that he "was punished for infractions that others were not punished for." [Doc. No. 1, ¶ IX].

The City characterizes this first claim as a "work rules violation," which under Fifth Circuit precedent requires Shaw to show as part of his *prima facie* case that he did not violate a rule or that, if he did, white employees who committed similar violations were not punished. *See Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012). Shaw does not dispute that he committed the work rules violations. Thus, in order to establish his *prima facie* case, he would have to show that white employees who committed similar violations were not punished.

Shaw cannot meet this burden. Shaw testified that there were many infractions when he believed that employees should have been punished, but he did not point to a single instance when a white employee committed a similar violation, but did not suffer the same punishment as Shaw. Shaw instead complains that he was unfairly disciplined, either because of the specific facts of the incident or because, in his opinion, no other employee, regardless of race, would have received the same discipline.

Specifically, Shaw contends that he should not have received a written warning on December 9, 2009, for being involved in a physical altercation with another African-American employee because he did not begin the physical aspect of the altercation, but he did not point to

anyone outside the protected class who was involved in a physical altercation, but was not disciplined. He further complains that he was unfairly disciplined on February 22, 2010, for failing to wear his safety vest so that it was visible because no other employee *of any race* had been disciplined for this infraction. Finally, he complains that he was punished because he was the only employee, *of any race*, who was required to perform duties unrelated to his position as a rake hand. None of these complaints rise to the level of establishing a *prima facie* case of race discrimination.

When viewed in totality, Shaw's complaints stem from his dissatisfaction that he was treated poorly as compared to all other employees in the Department, and Title VII does not protect an employee from unfair business practices, only those that are discriminatory. *See Nieto v. L & H Packing Co.*, 108 F.3d 621, 624 (5th Cir. 1997) (holding that an employee's claim that his employer was "out to get him" because he was successful at "what he was doing," even if true, did not support a discrimination claim, as "Title VII ... do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus."); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("[S]lights or minor annoyances that often take place at work and that all employees experience, . . . personality conflicts at work that generate antipathy" and " 'snubbing' by supervisors and co-workers are not actionable" under Title VII). Thus, the City's Motion for Summary Judgment on Shaw's claim of discriminatory discipline is GRANTED.

      **b. Alleged Discriminatory Discharge**

Shaw also alleges that he was discriminatorily discharged on the basis of his race. For purposes of this motion, the City concedes that Shaw can establish a *prima facie* case, but

contends that it can meet its burden of producing legitimate, non-discriminatory reasons for his discharge. To support its argument, the City presents evidence to show that Shaw had a history of altercations, including with fellow employees, and rules violations and that he was ultimately discharged after receiving several written warnings, three occurring within three months of his discharge. Failure to follow an employer's rules and engaging in on-the-job altercations are legitimate, non-discriminatory reasons for discharge. Thus, the Court finds that the City has met its burden of production.

Since Shaw has failed to oppose the motion, he cannot meet his burden to show that the reasons provided are pretextual or, even if true, that his race was also a motivating factor in his discharge. Further, the Court's own review of Shaw's deposition and the other evidence does not reveal evidence sufficient to raise a genuine issue of material fact for trial. Accordingly, the City's Motion for Summary Judgment on Shaw's claim that he was discriminatorily discharged on the basis of race is GRANTED.

    2.    **Age Discrimination**

Shaw also asserts that he was discharged on the basis of his age, 55, and that he was replaced by a younger employee.

The City assumes, for purposes of this motion, that Shaw has sufficiently alleged a *prima facie* case of age discrimination since he was discharged, qualified, forty years or older (and thus within the class protected by the ADEA), and replaced by someone younger. However, for the reasons detailed above, the City contends that he was not discriminatorily discharged, but was properly discharged on the basis of his work history.

Shaw has not opposed the Motion for Summary Judgment and thus has offered no

evidence to show that the City's reasons for his discharge are pretextual or motivated, at least in part, by his age. Further, the Court's own review of Shaw's deposition and the other evidence does not reveal evidence sufficient to raise a genuine issue of material fact for trial. In fact, Shaw was hired for the position rake hand at the age of 51, while a member of the protected class, and he admitted that there are several individuals who have been employed by the Department for years, including an individual who is 72 years old. Under these circumstances, the City's Motion for Summary Judgment on Shaw's claim that he was discriminatorily discharged on the basis of age is GRANTED.

    C.  **Hostile Work Environment**

"To establish a prima facie case of hostile work environment, a plaintiff must show: (1) that he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on [the protected characteristic]; (4) the harassment affected a term, condition, or privilege of employment; and (5) the defendant knew or should have known of the harassment, yet failed to take prompt remedial action." *Watkins v. Tex. Dep't of Criminal Justice*, 269 Fed. App'x 457, 463 (5th Cir. 2008); *see also Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 438 (5th Cir. 2011) (recognizing that claims for hostile work environment may be levied under the ADEA). If the harassment is allegedly committed by a co-worker, the plaintiff must establish all five elements; if the harassment is allegedly committed by a supervisor with immediate or successive authority over the victim, the plaintiff need only satisfy the first four elements. *Celestine v. Petroleos de Venezuella SA*, 266 F.3d 343, 353 (5th Cir. 2001) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)).

    Fifth Circuit precedent makes it clear that subjective belief of racial motivation cannot

import racial animus into an individual's conduct and, without objective evidence, is insufficient to create a *prima facie* claim for hostile work environment under Title VII. *See, e.g.*, *Lyles v. Texas Alcohol Beverage Comm'n*, 379 Fed. App'x 380, 384 (5th Cir. 2010); *Cavalier v. Clearlake Rehab. Hosp., Inc.*, 306 Fed. App'x 104, 107 (5th Cir. 2009); *Johnson v. TCB Constr. Co.*, 334 Fed. App'x 666, 671 (5th Cir. 2009); *Garza v. Laredo Indep. Sch. Dist.*, 309 Fed. App'x 806, 809 (5th Cir. 2009); *Baker v. FedEx Ground Package Sys. Inc.*, 278 Fed. App'x 322, 329 (5th Cir. 2008); *Watkins*, 269 Fed. Appx. at 464; *Ellis v. Principi*, 246 Fed. App'x 867, 871 (5th Cir. 2007); *Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. App'x 913, 917 (5th Cir. 2006). The same is true of a plaintiff's belief as to age animus under the ADEA. *Jefferson v. Christus St. Joseph Hosp.*, 374 Fed. App'x. 485, 492 (5th Cir. 2010) ("'Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden in a motion for summary judgment,' *Ramsey v. Henderson*, 286 F.3d 264, 269 (5th Cir. 2002) (quotation omitted), much less make out a claim.").

Additionally, "for harassment to be actionable, it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Watkins*, 269 Fed. App'x at 464 (internal quotation marks omitted). In determining whether a workplace constitutes a hostile work environment, courts must consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance." *Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 23 (1993); *see also Dediol*, 655 F.3d at 441 ("A workplace is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment.'"

(quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)).

In this case, Shaw cannot meet his burden of showing that he was subjected to a hostile work environment on the basis of race or age.[3] Prior to 2008, Shaw does not contend that he was harassed. In his deposition, Shaw testified that he believed that he was subjected to harassment on the basis of his race subsequent to the election of President Obama in 2008. He claims that, after this time, Kennedy stopped speaking to him, there were pictures of men hanging and anti-Obama political cartoons left on the walls of the Department facilities, that he was made to clean trucks, that he was struck with a knuckle boom, that another employee destroyed his time card, and that his fellow crew members, Hausherr and Neely were hostile to him. He specifically alleges that Hausherr used the "N" word, was "mean" and "dangerous," would not stop to let Shaw use the restroom on occasion, and would not allow Shaw to control the radio in the truck. Finally, Shaw claims that he "was allowed to be struck with a knuckle boom without anything being done to the driver who hit him," but "[w]hite employees were not required to endure such physical abuse." [Doc. No. 1, ¶ VIII].

Other than the pictures of men hanging and his complaints about Hausherr's use of the "N" word, Shaw has presented only his subjective belief that the actions about which he complains were related to his race. The Court certainly does not disregard a claim that Shaw's fellow employee intentionally injured him. However, he has presented no evidence that the injury was intentional or that it was based on his race. With regard to the pictures, he admits that he did not know which employees drew the pictures and that any images were cleaned up daily.

---

[3] It appears to the Court that Shaw attempted to assert a hostile work environment claim solely on the basis of race. However, because the Complaint is not entirely clear, the City and this Court have analyzed his claims of hostile work environment under Title VII and the ADEA.

11

Finally, the pictures of men hanging, his allegations against Hausherr, and the other actions complained of, even when considered together, simply do not rise to the level of severe or pervasive harassment necessary for a plaintiff to prevail at trial. Under these circumstances, there are no genuine issues of material fact for trial on on Shaw's claim of a racially hostile work environment.

With regard to Shaw's claims of a hostile work environment based on age, Shaw presented no evidence whatsoever that he had been subjected to harassment. He admitted during his deposition that he had neither seen nor heard any conduct or comments directed to employees on the basis of age. Thus, there are also no genuine issues of material fact for trial on his claim of a hostile work environment based on age animus. The City's Motion for Summary Judgment on Shaw's hostile work environment claims is GRANTED.

### III. CONCLUSION

For the foregoing reasons, the City's Motion for Summary Judgment [Doc. No. 17] is GRANTED, and Shaw's claims against it are DISMISSED WITH PREJUDICE.

MONROE, LOUISIANA, this 3rd day of April, 2013.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE